IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **JACOB SMALE, AND ALL OTHER SIMILARLY SITUATED UNDER 29 USC 216(B),**<br>*Plaintiff*,<br>v.<br>**AR TRINITY CREDIT SERVICES LLC, and ANGELA RESTON,**<br>*Defendants*. | **Civil Action No. 4-14-cv-774**<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Jacob Smale ("Plaintiff" or "Jacob") makes the following allegations against AR Trinity Credit Services LLC ("Trinity Credit") and Angela Reston ("Reston") (collectively, "Defendants"), and in support shows the following:

### INTRODUCTION

Employees must trust employers to pay them their hard-earned money and comply with federal law. Trinity Credit violated this trust by cheating Mr. Smale out of his hard-earned commissions and overtime rights. Trinity Credit, however, couldn't stop there. When Mr. Smale confronted the company about committing federal law, Trinity Credit fired him. Trinity justified the termination by fabricating a lie that Mr. Smale had sexually harassed coworkers.

Trinity Credit did not pull this lie out of thin air, but rather acted in a cool and calculating manner to attempt to ruin Plaintiff's life. Specifically, Trinity Credit wanted to send a message to Mr. Smale that it would do *anything* to prevent Mr. Smale's wife's

immigration if he reported the company's illegal acts or threatened the company's business model.

Trinity Credit's behavior would come as no surprise to the litany of other employees that Reston and her cohorts have egregiously mistreated and manipulated over the years. Mr. Smale files the instant suit to send Trinity Credit a lesson: You will never again act with conscious disregard to the rights of your employees or you customers and get away with it.

## PARTIES

Plaintiff was a resident of the Eastern District of Texas at the time this dispute arose.

Members of the putative class consist of other individuals having the same job title and/or job responsibilities as the Plaintiff. Specifically, members of the putative class include all individuals who have called, solicited, and sold Defendant Corporation's credit repair services to consumers over the telephone at Defendant Trinity Credit's McKinney location at 404 Power House Street, McKinney, TX 75071.

On information and belief, Corporate Defendant Trinity Credit is a Texas Limited Liability Company with its principal place of business at 404 Power House Street, McKinney, TX 75071. Trinity Credit has appointed Angela Reston, 404 Power House Street, McKinney, TX 75071, as its agent for service of process.

On information and belief, Individual Defendant Reston is the managing partner, president, and/or owner of the Defendant Corporation who ran the significant day-to-day operations of Trinity Credit during the relevant time period. Reston may be served at her

place of business, 404 Power House Street, McKinney, TX or wherever she may be found.

**JURISDICTION AND VENUE**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case is brought pursuant to the Fair Labor Standards Act. 29 U.S.C. §§ 201-219.

**FACTS**

**A.    Trinity Credit: Business and Employee Commission Structure**

Defendant Trinity Credit is a credit repair organization that sells credit repair services ("Credit Services") across the country. Trinity hires "credit coaches" ("Credit Coaches") to call potential customers to call, solicit and sell these services.[1]  Trinity has no set price for the Credit Services, but rather incentivizes Credit Coaches to sell Credit Services for as much money as possible. Tactics like this have caused Trinity to earn an "F" rating with the Better Business Bureau.

Credit Coaches work exclusively based on commission. Credit Coaches, including Plaintiff, receive 90% of proceeds derived from consumer-purchased credit services ("Credit Services") after paying Trinity Credit's "Retainer House Cost." In a typical transaction, Trinity Credit would charge $600 as the "Retainer House Cost." If a Credit Coach manages to trick a customer into paying an inflated $900 for Credit Services, the Credit Coach becomes entitled to a payment of $270, representing 90% of the difference ($300) between the "Retainer House Cost" and the amount paid for the service.

---

[1] For purposes of this Complaint, all individuals with the same basic duties and commission-based wages as Plaintiff will be referred to as "Credit Coaches." Plaintiff alleges that all Coaches are similarly situated and

Trinity Credit requires Credit Coaches to attend mandatory meetings and pushes Credit Coaches to work on the weekends to solicit potential clients over the telephone. As a result, Trinity Credit Coaches commonly work over 50 hours a week without being paid overtime and often minimum wage.

**B.     Trinity Credit's Architect Ms. Angela Reston**

Reston serves as Trinity Credit's Chief Executive Officer and offices at Trinity Credit's McKinney location. Reston supervises the day-to-day operation of Trinity Credit by (1) determining methods of employee payments; (2) handling pay disputes;[2] (3) having the power to hire and fire employees;[34] and (4) supervising and controlling employee work.[5]

The following blog entry exhibits the type of control Angela Reston exercises over her employees:

> **Angela the Thief of Trinity Credit Services!**
> If your looking for a job or a company where I will employ you and then treat you like shit and steal from you, fire you, Harass you, not pay you and stalk you!! then you came to the right place. Im a freakin loser and I dont know my ASS from a hole in the ground!! But I will hire you no problem!! As long as I can control you and you dont mind being manipulated from me!
>
> Hi,
> My name is Angela and I am the worthless business owner of Trinity Credit

---

[2] Mr. Smale went to Reston regarding the payment of certain referral fees that he felt the company was withholding. Ultimately, his supervisors indicated that Angela had determined against paying these referral fees.

[3] When Plaintiff was hired by Trinity Credit Services, a consulting manager at Trinity Credit Services, Ryan Roodenburg called Smale and indicated that, "I talked to [Reston] and she told me that you should come in and start working for us."

[4] *See e.g.* Corporate Defendant's Facebook Page www.facebook.com/trinitycreditservices (last visited January 5, 2014, indicating in an April 28, 2014 post that, "Angela made me see the light at the end of the tunnel, in more ways than one. She recruited me to work for her at Trinity Credit Services, and after that, I saw first-hand how we were able to assist our clients. I became a believer, and I wanted to share it with the world.")

[5] Employees visit Reston's Office for the final say regarding such issues as payment of commissions and internal disputes between employees.

> Services in Melissa Texas. My company is great but I will personally rip you off and I will pull power trips on you all the time! I cant handle being the boss and it all goes to my ugly head. I look like a little boy and I am a "MAN HATER"! But I want to be one soooooo bad!! WHY CANT I BE A BOY??? I think I may even get the surgery! Why NOT?? Or maybe just keep a Banana in my pocket!
> I have sooooo many issues that you will find out about me if you come in and work for me!
> Please come and see what Trinity Credit Services has to offer! Lots of good times here.. Especially, if you like to work in fear and wonder when the next time I may use you to get what I want!!
> I promise you that I will steal your money and not pay you! This is a GREAT PLACE TO WORK! Come in and meet me so I can show you what a fool I am!
>
> Angela Reston~ www.grow-a-dick.com 1-900-blowme
> Posted by Nightmare! at 12:03 AM

The sentiment of the above blogger corroborates Plaintiff's experience with Ms. Reston.

**C.    Defendants Fire Smale Based on Inquiries and Refusal to Commit Illegal Acts**

On the morning of June 25, 2014, Plaintiff confronted Trinity Credit regarding the companies' repeated violations of various federal laws. ("Illegal Acts") During the conversation, Plaintiff confronted and refused to continue aiding and abetting Trinity's commission of the Illegal Acts, including specifically Trinity Credit's practice of obtaining consumer credit information under false pretenses. Within minutes of the confrontation, Trinity Credit fired Mr. Smale.

**D.    Trinity Credit Fabricates and Publicizes Sexual Harassment Allegations to Torment and Justify Termination of Mr. Smale**

When Trinity Credit fired Mr. Smale, it justified its actions based on fabricated sexual harassment allegations. This was the second time Trinity Credit fabricated sexual harassment allegations against Mr. Smale. The company had fabricated similar

allegations on May 23, 2014 after Mr. Smale had questioned the company regarding proper payment of his commissions.

Trinity Credit had a motive in fabricating the sexual harassment claims against Mr. Smale. After learning that Mr. Smale had applied to move his future foreign wife into the United States, Trinity Credit threatened Mr. Smale that it could prevent her arrival by fabricating sexual harassment charges.

While still employed by Trinity Credit, Mr. Smale suffered from extreme amounts of abuse and mental anguish after Trinity Credit spread rumors about the falsehoods throughout the office. Following Mr. Smale's termination, Ms. Reston admitted the falsity of these sexual harassment allegations to Mr. Smale's former co-worker.

**E.     Trinity Credit Fails to Pay Earned Commissions to Smale Upon Termination**

On information and belief, Jacob and Trinity Credit never formalized a commission agreement between the parties with a written contract. TCS, however, consistently paid Plaintiff 90% of proceeds derived from ("Credit Services") after paying Trinity Credit's "Retainer House Cost." TCS would typically pay Plaintiff on the date indicated on "Payment Plan – Internal" sheets. At the time of Plaintiff's termination nearly $8,000 of the payments due under the "Payment Plan – Internal" was unpaid, without accounting for payments made by consumers for Credit Services following Smale's termination.

**F.     Trinity Fraudulently Fails to Pay Plaintiff Full Commissions During His Employment**

During his employment with the Trinity Credit, Trinity Credit repeatedly forced Mr. Smale to pay referral fees to Trinity Credit to pay to individuals. Trinity Credit

explained that it needed to pay these referral fees to incentivize individuals to refer potential clients for Credit Services.

Trinity Credit, however, often could not locate the individuals who were purportedly due the referral fees. Instead of paying back this money, as Trinity Credit indicated would be done, Trinity Credit pocketed the money at the expense of Plaintiff and other Trinity Coaches. On information and belief, Trinity Credit also paid these referral fees to Trinity Credit employees that did not have any involvement in selling the underlying Credit Services. Trinity Credit, however, knew at the time of these referral payments that the employees had not earned the referral fees.

### **CLAIM 1: FAIR LABOR STANDARDS ACT VIOLATIONS**

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Defendants were Plaintiff's employers for the relevant time period. As described above, Reston is the managing partner, owner, and/or president of the Defendant Company who (1) has the power to hire and fire employees; (2) ran the day-to-day significant operations of the Corporate Defendant; and (3) regularly controlled and established company rules for Plaintiff to abide by while employed by the Defendants. As described above, several other of Defendants' "similarly situated" employees—having the same job responsibilities as Plaintiff at Trinity Credit's headquarters—were not paid overtime or minimum wages in compliance with the Fair Labor Standards Act in the previous three (3) years from the date of this filing.

During the relevant time period, Plaintiff's work for Defendants substantially affected interstate commerce because Plaintiff regularly used the mail and/or telephone for interstate communications and kept records of interstate transactions. Plaintiff's work

for the Defendants involved such a close relationship to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to Plaintiff's work for Defendants.

Defendants separately and/or combined had gross sales or business done in excess of $500,000 for the years 2011, 2012, 2013, and 2014. Moreover, Defendants regularly employed two (2) or more individuals that regularly used the mail and/or telephone for interstate communications, making Defendants a business enterprise covered under the Fair Labor Standards Act.

The federal minimum wage during the relevant time period was $7.25 per hour. Plaintiff worked for Defendants from on or about January 13, 2014 to June 25, 2014. Plaintiff worked an average of 50 hours per work during the time period, but was never paid overtime wages during any week in which he worked over 40 hours. Defendants willfully and intentionally refused to pay Plaintiff's overtime and minimum wages as required by the Fair Labor Standards Act because Defendants (1) knew of the Fair Labor Standards Act's overtime and minimum wage requirements; and (2) recklessly failed to investigate whether Defendants payroll practices were in accordance with the Fair Labor Standards Act.

## CLAIM 2: BREACH OF CONTRACT

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Plaintiff makes his breach of contract claim on the following facts and legal conclusions:

- Trinity Credit and Plaintiff entered into a contract during Plaintiff's employment for payment of commissions;

- The contract promised Plaintiff payment of commissions in exchange for getting customers to enter into contracts for Credit Services;

- Plaintiff tendered performance of his obligations by getting customers to enter into contracts and pay for credit services;

- Corporate Defendant breached the contract by failing to pay Plaintiff pursuant to the contract;

- Corporate Defendants' breach proximately caused injury to Plaintiff, resulting in damages of approximately $8,000 that represents the amount of unpaid commissions currently owed to Plaintiff.

Plaintiff has performed all conditions precedent for his breach of contract claim.

### CLAIM 3: QUANTUM MERUIT

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Pleading further, and in the alternative if necessary, Plaintiff alleges the following legal conclusions:

- Plaintiff provided valuable services to Trinity Credit;

- The Services were provided to Trinity Credit;

- Trinity Credit accepted the services or materials; and

- Trinity Credit had reasonable notice that the Plaintiff expected compensation for his services.

Plaintiff seeks the fair market value for his services including the approximately $8,000 in unpaid commissions that he earned while providing Defendants with services.

### CLAIM 4: WRONGFUL DISCHARGE

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Pleading further, and in the alternative if necessary, Plaintiff alleges the following legal conclusions:

- Plaintiff was an at-will employee;

- Plaintiff refused to perform Illegal Acts and/or inquired whether the required Illegal Acts were illegal; and

- Trinity Credit, by and through its agents, employees, and Reston, fired Plaintiff based exclusively on his refusal to perform the Illegal Acts and/or his inquiry regarding the legal of the Illegal Acts.

Defendants' actions proximately caused Plaintiff injury, resulting in damages. Defendants committed the above actions intentionally, knowingly and with callous disregard to Plaintiff's legitimate rights, entitling Plaintiff to exemplary damages against Defendants. Specifically, Defendant (1) circulated a rumor/falsely accused Plaintiff of sexual harassment; (2) actively interfered with Plaintiff's ability to find other employment; (3) harassed the Plaintiff; and (4) terminated Plaintiff knowing that unlawfulness of the termination.

### CLAIM 5: DEFAMATION: LIBEL PER SE AND SLANDER PER SE

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs. Pleading further, and in the alternative if necessary, Plaintiff alleges the following legal conclusions:

- Plaintiff is a private citizen;

- Trinity Credit published both false oral and written statements regarding Plaintiff; and

- The statements were defamatory as a matter of law because the statements imputed sexual misconduct and were so egregious/hurtful to constitute defamation per se.

Plaintiff suffered general damages as a result of Trinity Credit's defamatory acts, including damages for injury to Plaintiff's character or reputation, and mental anguish. Moreover, because Defendant committed the defamatory acts with reckless disregard for the truth of those statements, Plaintiff is entitled to exemplary damages.

## CLAIM 6: FRAUD

Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs and specifically Section F above. Pleading further, and in the alternative if necessary, Plaintiff alleges the following legal conclusions:

- Trinity Credit made a representation regarding the payment of certain referral fees to third party individuals;

- The representation was material;

- The representation was false;

- When Trinity Credit made the representation, Trinity Credit knew that the representation was false;

- Trinity Credit made the representation with the intent that Plaintiff act on it;

- Plaintiff acted on the representation;

- The representation caused Plaintiff injuries.

Trinity committed the above actions intentionally, knowingly and with callous disregard to Plaintiff's legitimate rights, entitling Plaintiff to exemplary damages against both Matthews and Virginia Cook Realty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

(a). Double damages in regards to Plaintiff's FLSA claim;

(b). Attorneys fees;

(c). Plaintiff's reinstatement into his previous position as a Credit Coach;

(d). Actual damages, including back pay and future pay;

(e). Exemplary damages;

(f). Mental Anguish Damages;

(g). Character and reputation damages;

(h). Post-judgment and pre-judgment interest;

(i). Court costs; and

(j). Any and all other relief, at law or equity, to which Relator may show itself to be entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial.


Dated: January 20, 2015                     Respectfully submitted,

                                            By: /s/ Jack Siegel

                                            Jack Siegel
                                            State Bar No. 24070621
                                            Siegel Law Group
                                            Meadow Park Tower
                                            10440 N. Central Expy., Suite 1040
                                            Dallas, TX 75231
                                            (214) 706-0834
                                            Jack@siegellawgroup.biz

                                            **Attorney for Plaintiff**

-13-

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and, to the extent necessary, sent by electronic mail. As such, this Opposition was timely served on Defendant's counsel by electronic service.

Date: January 20, 2015

/s/ Jack Siegel
Jack Siegel